**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**MARK DUVA and**
**ASHLEY DUVA,**

        **Plaintiffs,**

      **v.**                                  **Case No. 23-C-513**

**TRAVELERS PERSONAL**
**INSURANCE COMPANY,**

        **Defendant.**

---

**DECISION AND ORDER CONFIRMING APPRAISAL AND**
**GRANTING MOTION FOR SUMMARY JUDGMENT**

---

In the spring of 2022, after a pipe burst in Plaintiffs Mark and Ashley Duva's home and caused water damage in their master bathroom, Plaintiffs filed a claim with their homeowner insurer, Defendant Travelers Personal Insurance Company. Initially, Travelers made a few small payments to Plaintiffs pursuant to their policy, but the parties were ultimately unable to agree on the total amount of loss. Plaintiffs then brought this action alleging breach of contract and bad faith and seeking statutory interest pursuant to Wis. Stat. § 628.46. Because the parties' dispute concerned only the amount of loss and not coverage, the court compelled appraisal pursuant to the parties' insurance policy. Dkt. No. 20. Appraisal is complete, and Travelers has issued payment consistent with the award. This matter comes before the court on Travelers' motion to confirm the appraisal award and for summary judgment. The court has jurisdiction under 28 U.S.C. § 1332, as Plaintiffs are citizens of Wisconsin, Travelers is a citizen of Connecticut, and the amount in controversy exceeds $75,000. For the following reasons, the court will grant Travelers' motion to confirm the arbitration award, as well as its motion for summary judgment, and dismiss all claims.

# PRELIMINARY MATTERS

At the outset, Plaintiffs request that the court deny Travelers' motion for failure to comply with the court's summary judgment procedures. The local rules of this district provide that with each motion for summary judgment, the moving party must file "a statement of proposed material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." Civil L.R. 56(b)(1)(C). The statement of proposed material facts "shall consist of short numbered paragraphs, each containing a single material fact, including within each paragraph specific references to the affidavits, declarations, parts of the record, and other supporting materials relied upon to support the fact described in that paragraph." Civil L.R. 56(b)(1)(C)(i). Plaintiffs assert that certain proposed findings of fact do not comply with Civil Local Rule 56(b)(1)(C)(i) because they are unsupported by a citation to the record. In deciding the motion, the court will not consider those proposed findings of fact not supported by a record citation. *See Hinterberger v. City of Indianapolis*, 966 F.3d 523, 528 (7th Cir. 2020) ("[D]istrict courts may require strict compliance with their local rules.").

Plaintiffs also assert that the proposed findings of fact do not comply with Civil Local Rule 56(b)(1)(C)(i) because certain paragraphs contain more than a single fact. But Plaintiffs responded to the proposed findings of fact, and if each of Travelers' 51 proposed facts was separated into one material fact per paragraph, Travelers' statement of fact would not exceed the limit of 150 set by the local rule. *See* Civil L.R. 56(b)(1)(C)(ii). In short, the court will consider these proposed findings of fact in deciding Travelers' motion.

Finally, Plaintiffs argue that Travelers' brief does not comply with Civil Local Rule 56(b)(6) because it does not properly cite to the proposed findings of fact. That local rule provides that assertions of fact in the moving party's memoranda must "refer to the corresponding numbered

paragraph of the statement of facts, statement of additional facts, or statement of stipulated facts."
Civil L.R. 56(b)(6). In response, Travelers filed an amended brief in support of the motion to confirm the appraisal award and for summary judgment that includes citations to Travelers' statement of proposed material fact. Even though Travelers' initial brief did not comply with the local rules, the court finds that sanctioning Travelers for its noncompliance is not warranted. But this serves as an important reminder that a court's local rules are not mere technicalities; they are designed to serve both litigants and the court. *See Zimbal v. Firstech, Inc.*, No. 22-CV-985-PP, 2024 WL 1303996, at *2 (E.D. Wis. Mar. 27, 2024) (exposing issues that arise when a party fails to comply with Civil Local Rule 56). Counsel should take better care to ensure filings are compliant with the local rules. *See* General L.R. 1 ("Compliance with the rules is expected."). The court will now turn to the substance of Travelers' motion.

## BACKGROUND

Plaintiffs own a home in Sturgeon Bay, Wisconsin that is insured by Travelers under a homeowners policy, effective November 15, 2021, to November 15, 2022. Dkt. No. 32, ¶ 1. On May 27, 2022, a pipe burst in Plaintiffs' master bathroom between the shower and the toilet closet, causing damage and leading to mold growth. Dkt. No. 37, ¶¶ 55, 57. On June 3, 2022, Plaintiffs tendered a claim for the damage to Travelers. *Id.* ¶ 56.

The Travelers policy provides property coverage to a dwelling. It states:

1. We cover:
   a. The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and
   b. Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises."

Policy at 18, Dkt. No. 17-1. The policy provides that Travelers will insure against direct physical loss to the dwelling, subject to certain exclusions. *Id.* Covered property losses are settled as follows:

3. Loss Settlement . . .

b. Buildings covered under Property Coverages A or B at replacement cost without deduction for depreciation, subject to the following:

(1) If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the replacement cost, without deduction for depreciation, but not more than the least of the following amounts:

(a) The limit of liability under this policy that applies to the building;

(b) The replacement cost of that part of the building damaged with materials of like kind and quality and for like use; or

(c) The necessary amount actually spent to repair or replace the damaged building.

If the building is rebuilt at a new premises, the cost described in 3.b.(1)(b) is limited to the cost which would have been incurred if the building had been built at the original premises.

(2) If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

(a) The actual cash value of that part of the building damaged; or

(b) That portion of the replacement cost, without deduction for depreciation, for that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

. . .

(4) We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss as noted in Property Condition 3, Loss Settlement b.(1) and b.(2).

*Id.* at 31–32. The "loss payment" provision of the policy provides:

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 30 days after we receive your proof of loss and:

4

      **a.** Reach an agreement with you;
      **b.** There is an entry of a final judgment; or
      **c.** There is a filing of an appraisal award with us.

*Id.* at 63.

On June 8, 2022, Travelers found the loss to Plaintiffs' dwelling was covered under the policy. Dkt. No. 32, ¶ 4. It arranged for a restoration company, ServiceMaster, to inspect Plaintiffs' home and to perform emergency mitigation measures to minimize the damages. *Id.* ServiceMaster initiated these services on June 13, 2022. *Id.* ServiceMaster performed remediation work, which included ripping out and cleaning areas affected by the water and resulting mold. Dkt. No. 37, ¶ 58. ServiceMaster submitted a final invoice to Travelers on August 9, 2022, showing a total cost of $10,941.56. *Id.* ¶ 59. Between September 9, 2022, and September 15, 2022, Travelers received mold testing and remediation documentation from ServiceMaster. Dkt. No. 32, ¶ 7.

On September 15, 2022, Travelers issued payment for the covered amount of the invoice in the amount of $5,817.72 (the amount of ServiceMaster's invoice, less Plaintiffs' $5,000 deductible). *Id.* ¶ 8. That same day, relying on reports and photographs from ServiceMaster, Travelers estimated the replacement cost value to be $13,621.87. *Id.* ¶¶ 9–10; Dkt. No. 37, ¶ 63. It advised Plaintiffs that it had estimated the cost to repair the damage following water mitigation to be $2,703.84 ($13,621.87 replacement cost value, minus $100.31 in depreciation, minus the $5,000 deductible, and minus the $5,817.72 paid directly to ServiceMaster). Dkt. No. 32, ¶ 10. Sometime between September 15, 2022, and October 4, 2022, Travelers administratively closed the claim, though it indicated the claim would be reopened for review of any quotes Travelers received from Plaintiffs. Dkt. No. 37, ¶ 64; *see also* Dkt. No. 34-4.

Plaintiffs did not present Travelers with a repair estimate that differed in scope or cost of repairs from Travelers' estimate until November 2022. Dkt. No. 32, ¶ 12. On November 4, 2022, Plaintiffs submitted a bid prepared by DeLeers Construction, Inc., the custom builder of Plaintiffs' home, for a "Master Bath Rebuild" in the amount of $95,374.00. *Id.* ¶ 13; Dkt. No. 18-6 at 2, 8. Travelers reopened Plaintiffs' claim and, on November 23, 2022, issued a supplemental payment of $3,589.61 to Plaintiffs, for the supported, undisputed amount of loss. Dkt. No. 32, ¶ 15.

Travelers disputed the majority of the estimated loss. For instance, the DeLeers bid included a line item for "floor & wall tile" in the amount of $22,960.00, reflecting the use of natural marble tile. Dkt. No. 37, ¶ 67; Dkt. No. 18-6 at 7. Travelers' adjuster initially believed that the flooring and wall material did not appear to be marble but was instead ceramic or porcelain manufactured to look like marble. Dkt. No. 32, ¶ 18. After further review of the photographs Travelers had, it concluded the tile was natural marble on December 28, 2022. Dkt. No. 37, ¶ 72. Travelers updated its estimate to account for the flooring and issued a supplemental payment of $2,121.11 to Plaintiffs. Dkt. No. 32, ¶¶ 22–23.

In mid-January 2023, Travelers obtained a new field adjuster to inspect Plaintiffs' home. Dkt. No. 37, ¶ 73. On February 1, 2023, DeLeers updated its bid from $95,374.00 to $98,803.00. Dkt. No. 32, ¶ 24. Although the total cost of repairs increased by $3,429.00, the line item for "floor & wall tile" increased from $22,960.00 to $32,321.00. *Id.*

On February 14, 2023, Travelers offered to hire a contractor to inspect Plaintiffs' property and prepare a comparative bid to that of DeLeers. Dkt. No. 37, ¶ 82. Plaintiffs agreed on the condition that the contractor be a high-end custom home builder in Door County, Wisconsin with the capability to complete the project within three months of selection. *Id.* ¶ 83. Plaintiffs also

6

requested that the bid be prepared expeditiously, as the bid from DeLeers was set to expire and Plaintiffs were concerned about increasing inflation. *Id.* ¶ 84.

Travelers initially reached out to Door County custom contractor PortSide Builder to provide a comparative repair quote. Dkt. No. 32, ¶ 28. However, Plaintiffs informed PortSide that the firm would not be hired regardless of the quote PortSide provided. *Id.* On February 16, 2023, PortSide declined to prepare a comparative repair quote. *Id.*

During a February 17, 2023, phone conference with Mr. Duva, Travelers proposed to retain an independent building consultant to write an independent estimate. *Id.* ¶ 29. Mr. Duva agreed to Travelers' proposal, and on February 17, 2023, Travelers retained Cyril Zacharias of MKA International, Inc. to prepare a comparative bid. *Id.* ¶ 30. Zacharias inspected Plaintiffs' home on February 28, 2023. Dkt. No. 37, ¶ 85. On March 15, 2023, Zacharias submitted a preliminary bid in which he estimated the actual cash value to be $39,006.10 and the total replacement cost value to be $47,111.02, which was $51,690.98 less than that estimated by DeLeers. Dkt. No. 32, ¶ 32. Zacharias indicated that there was no disagreement with DeLeers over the scope of loss or the repairs necessary to restore Plaintiffs' master bathroom; rather, Zacharias attributed the difference in estimates to the pricing structure used by DeLeers for its bid. *Id.* ¶¶ 33–34. In response to Zacharias' comparative bid, Travelers revised the undisputed actual cash value of the repairs to Plaintiffs' house to be $51,498.35. *Id.* ¶ 35. On March 16, 2023, Zacharias sought out additional information from DeLeers concerning its pricing structure so as to reconcile the remaining discrepancies in the bids. *Id.* ¶ 38. That same day, Plaintiffs brought this action in Door County Circuit Court. *See id.* ¶ 39.

On April 13, 2023, Travelers issued an additional undisputed loss payment to Plaintiffs in the amount of $32,266.07 ($51,498.35 minus the $5000 deductible and Travelers' prior payments

7

of $14,232.28).  *Id.* ¶ 36.  Following receipt of service of process for Plaintiffs' lawsuit, Travelers invoked appraisal under the Travelers policy and removed the action to this court.  *Id.* ¶ 40.  The appraisal provision provides:

> **Appraisal.**  If you and we fail to agree on the amount of loss, either party may demand an appraisal of the loss.  In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other.  The two appraisers will choose an umpire.  If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located.  The appraisers will separately set the amount of loss.  If the appraisers submit a report of an agreement to us, the amount agreed upon will be the amount of loss.  If they fail to agree, they will submit their differences to the umpire.  A decision agreed to by any two will set the amount of loss.
>
> Each party will:
> **a.**     Pay its own appraiser; and
> **b.**     Bear the other expenses of the appraisal and umpire equally.

Policy at 33.  Plaintiffs asserted that invocation of appraisal was improper, so Travelers brought a motion to compel appraisal and stay litigation.  Dkt. No. 32, ¶ 41; Dkt. No. 18.  On November 2, 2023, this court granted Travelers' motion, compelling the parties to submit their disputes in accordance with the appraisal process and staying the case pending the completion of appraisal.  Dkt. No. 18.

The appraisal process lasted about five months.  Plaintiffs named Paul Hausz as their appraiser and Travelers named Raymond Pawlak as its appraiser.  Dkt. No. 32, ¶ 43.  Hausz and Pawlak agreed to appoint Kurt Ehlers as umpire to resolve any disputes.  *Id.*  On December 7, 2023, Hausz and Pawlak inspected Plaintiffs' home.  Dkt. No. 37, ¶ 94.  On May 20, 2024, Ehlers and Pawlak issued an original appraisal award in the amount of $71,424.48.  *Id.* ¶ 128.  The original award listed the type of loss as "water" but causation as "hail."  *Id.* ¶ 129; *see also* Dkt. No. 29-3 at 5.  The original award also did not include Hausz' signature acknowledging Ehlers' appointment as umpire, nor did it include a date indicating when Pawlak signed to certify the award.  Dkt. No.

8

37, ¶¶ 130–31; Dkt. No. 29-3 at 5. A corrected appraisal award was issued on June 3, 2024. Although the amount of loss remained the same, the corrected appraisal award contained certain amendments: causation was changed to "water" and Hausz' signature, dated June 3, 2024, was added to acknowledge Ehlers' appointment as umpire. Dkt. No. 37, ¶¶ 133, 136; *see also* Dkt. No. 29-3 at 27. In accordance with the appraisal award, Travelers issued an additional check to Plaintiffs in the amount of $19,926.13 on June 13, 2024. Dkt. No. 32, ¶ 47. Plaintiffs' counsel received the check the next day. *Id.* ¶ 48.

## ANALYSIS

Travelers has filed a motion to confirm the appraisal award and for summary judgment. Wisconsin law governs. In deciding the motion, the court must apply Wisconsin law as it believes the Wisconsin Supreme Court would. *Doermer v. Callen*, 847 F.3d 522, 527 (7th Cir. 2017). When the issues presented have not been squarely addressed by the Wisconsin Supreme Court, the court looks to the decisions of other Wisconsin courts. *Stevens v. Interactive Fin. Advisors, Inc.*, 830 F.3d 735, 741 (7th Cir. 2016). In the absence of any Wisconsin authority on an issue, the court may look to other jurisdictions that have addressed the issue but always with the aim of predicting how the Wisconsin Supreme Court would decide the issue. *Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1090 (7th Cir. 1999). With these principles in mind, the court will turn to Travelers' request that the court confirm the appraisal award.

### A. Appraisal Award

Travelers invoked the appraisal provision contained in the Travelers policy to set the amount of loss in this matter. The appraisal provision of the policy provides:

> **Appraisal.** If you and we fail to agree on the amount of loss, either party may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an

9

umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:
**a.** Pay its own appraiser; and
**b.** Bear the other expenses of the appraisal and umpire equally.

Policy at 33. Travelers asserts that the appraisal award should be confirmed.

"Wisconsin public policy favors freedom of contract—the idea 'that individuals should have the power to govern their own affairs without governmental interference.'" *Meier v. Wadena Ins. Co.*, 95 F.4th 514, 516 (7th Cir. 2024) (quoting *Merten v. Nathan*, 108 Wis. 2d 205, 321 N.W.2d 173, 177 (1982)). Thus, when parties contract to resolve disputes through alternative means, the courts strive to back that choice by "ensuring that the promises will be performed, thereby preserving justifiable expectations and the security of transactions." *Id.* (cleaned up). It is the duty of the contracting parties to understand and evaluate the obligations they undertake prior to binding themselves to an agreement. *Id.* (citing *Farmers Auto. Ins. Ass'n v. Union Pac. Ry. Co.*, 2009 WI 73, ¶ 38, 319 Wis. 2d 52, 768 N.W.2d 596).

These principles apply with equal force to appraisal, a process in which parties agree "to allow third party experts to determine the value of an item." *Farmers*, 319 Wis. 2d 52, ¶ 42. In *Farmers*, the Wisconsin Supreme Court explained the court's limited role in reviewing appraisal awards:

The court's role is not to determine whether the third party experts accurately valued the item (as if the court itself could do [a] better job), but whether the third party experts understood and carried out the contractually assigned task. The obvious point of contracting for an appraisal process is to keep a jury or court out of that decision. Courts have an obligation to enforce this aspect of an agreement between parties by asserting only limited power to review appraisal awards.

10

*Id.* The court noted that appraisals deserve deferential review because they "promote finality, are time and cost-efficient, and place a difficult factual question—the replacement value of an item—into the hands of those best-equipped to answer that question." *Id.* ¶ 43. For these reasons, "appraisals are presumptively valid" and "should not be lightly set aside, even if the court disagrees with the award." *Id.* ¶ 44. "Unhappiness with the amount of an appraisal award is not enough to set it aside." *Id.* (citing another source). Instead, "[a]n appraisal may be set aside only upon the showing of fraud, bad faith, a material mistake, or a lack of understanding or completion of the contractually assigned task." *Id.* (citing *Dechant v. Globe & Rutgers Fire Ins. Co.*, 194 Wis. 579, 217 N.W. 322, 322 (1928)). And evidentiary review is constrained "to the face of the award" unless "fraud, bad faith, material mistake, or a lack of understanding of the process are reasonably implicated." *Id.* ¶ 45.

Plaintiffs assert a number of challenges to the face of the appraisal awards to establish that they reasonably implicate fraud, bad faith, a material mistake, and a lack of understanding. First, Plaintiffs argue that the issuance of a corrected award is itself indicative of a material mistake and a lack of understanding. Plaintiffs contend that, as to the original award, "hail" is listed under causation and Pawlak's signature certifying the award is not dated, demonstrating a material mistake and a lack of understanding. As an initial matter, the issuance of a corrected appraisal award is not indicative of a material mistake or a failure to understand. *See Gronik v. Balthasar*, No. 10-CV-00954, 2014 WL 2739333, at *2 (E.D. Wis. June 17, 2014) (noting that an amended award was issued several months after the original award but not considering this fact when finding that fraud, bad faith, a material mistake, or a lack of understanding were not reasonably implicated).

11

In this case, the corrected award only remedied immaterial errors. In particular, the corrected award changed causation from "hail" to "water." Plaintiffs contend that in the original award, "hail" is listed under causation, which demonstrates a material mistake. It is clear from the appraisal awards, however, that there was no confusion about what caused the damage to Plaintiffs' master bathroom. While the original award listed "hail" under causation, the award listed "water" as the type of loss. Dkt. No. 29-3 at 5, 27. Pawlak's estimate, which was attached to the award, lists "water" as the type of loss, *id.* at 6, 28, and the line item for remediation references "water extraction," *id.* at 7, 29. Plaintiffs' attempt to isolate the limited reference to "hail" in the original award so as to conjure up a material mistake is unreasonable.

The corrected award also included Hausz' signature, dated June 3, 2024, to acknowledge Ehlers' appointment as umpire. Plaintiffs assert that the appraisers could not have understood their contractually assigned task because Hausz' signature appointing Ehlers as umpire was not included on the original award. They contend that Hausz' failure to acknowledge Ehler's appointment as umpire by signature until June 3, 2024, after Ehlers certified the award on May 20, 2024, is evidence of fraud and bad faith. The policy provides that "[t]he two appraisers will choose an umpire." Policy at 33. It does not require that decision to be made in writing, nor that it be attested to by the parties' respective appraisers, nor that the decision be memorialized prior to taking any further action. There is no dispute that Pawlak and Hausz agreed to appoint Ehlers as umpire. Dkt. No. 32, ¶ 43. Thus, Plaintiffs' claim that the omission of Hausz' signature from the original award establishes that the appraisers failed to understand their contractually assigned task is specious.

Plaintiffs also argue that the award is invalid because Pawlak's signature certifying the original award is not dated. But the policy's appraisal provision does not require a signed and

dated award, only that two of the three appraisal panel members agree to the amount of loss. There is no dispute that Ehlers and Pawlak agreed on the amount of loss or that the award conforms to their agreement. Because Ehlers and Pawlak both signed the original and corrected awards, Pawlak's undated signature is a mere clerical error, not a material mistake.

Finally, Plaintiffs assert that the estimate attached to the original and corrected awards is incomplete, thus evidencing that the appraisers failed to understand the scope of their contractually assigned task. They contend that while the final award listed $10,941.56 for "mitigation," Pawlak's estimate stated mitigation was $0 "pending supporting documents on mitigation." *See* Dkt. No. 29-3 at 29. Plaintiffs contend that the "pending supporting documents" note in Pawlak's estimate indicates that the appraisers did not finish their appraisal and therefore misunderstood their contractually assigned task. Pawlak's estimate, dated May 15, 2024, valued total replacement cost at $60,482.92. *Id.* at 37. The ultimate award, which Ehlers signed five days later on May 20, 2024, totaled $71,424.48. *Id.* at 27. This amount represented the sum of "gross loss," which totaled $60,482.92, and "mitigation," which totaled $10,941.56. *Id.* Even if Pawlak's estimate was pending supporting documentation at the time he completed it, the appraisal panel reached a finalized, majority agreement on the amount of loss for mitigation. Plaintiffs also point to a number of "bid items" in Pawlak's estimate that they view as being unknown and undefined. *See, e.g.*, *id.* at 29. But the "bid items" in Pawlak's estimate are incorporated into the appraisal award as the cost of the marble-related labor and materials valued at $26,242.34. *Id.* at 32. Nothing on the face of the award demonstrates that the appraisal panel failed to understand its assigned task or that the award was incomplete.

For these reasons, the court concludes that "fraud, bad faith, material mistake, or a lack of understanding of the process" are not "reasonably implicated" by the face of the original or

corrected awards. *Farmers*, 319 Wis. 2d 52, ¶ 44. The court is therefore precluded from considering other extrinsic evidence offered by Plaintiffs. *Id.* ¶ 45. Accordingly, the appraisal award is confirmed.

## B. Summary Judgment

Travelers has also moved for summary judgment on Plaintiffs' breach of contract, bad faith, and statutory interest claims. Summary judgment is appropriate when the movant shows there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding a motion for summary judgment, the court must view the evidence and make all reasonable inferences in the light most favorable to the non-moving party. *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp.*, 477 U.S. at 322).

### 1. Breach of Contract and Bad Faith

Plaintiffs assert claims of breach of contract and bad faith against Travelers. "The elements of any breach of contract claim are (1) the existence of a contract between the plaintiff and the defendant; (2) breach of that contract; and (3) damages." *Pagoudis v. Keidl*, 2023 WI 27, ¶ 12, 406 Wis. 2d 542, 988 N.W.2d 606. In order to prevail on their claim against Travelers for breach of its policy, Plaintiffs must prove that Travelers "fail[ed] to pay the claim in accordance with the policy." *Brethorst v. Allstate Prop. & Cas. Ins. Co.*, 2011 WI 41, ¶ 36, 334 Wis. 2d 23, 798 N.W.2d 467 (internal quotation marks and citation omitted).

14

A claim of bad faith against an insurance company is separate and distinct from a claim for breach of contract against an insurer, but "some breach of contract by an insurer is a fundamental prerequisite for a first-party bad faith claim against the insurer by the insured." *Id.* at ¶ 65. Insurer bad faith is a tort created by the courts to "to provide a remedy when the insurance company breaches the 'implied covenant of good faith and fair dealing found in every contract.'" *Meleski v. Schbohm LLC*, 2012 WI App 63, ¶ 8, 341 Wis. 2d 716, 817 N.W.2d 887 (quoting *Roehl Transp., Inc. v. Liberty Mut. Ins. Co.*, 2010 WI 49, ¶ 41, 325 Wis. 2d 56, 784 N.W.2d 542). To prevail on a claim of insurance bad faith, an insured must prove that the insurer "unreasonably and in bad faith" withheld payment of the insured's claim. *Anderson v. Cont'l Ins. Co.*, 85 Wis. 2d 675, 689, 271 N.W.2d 368 (1978).

The policy at issue required Travelers to pay Plaintiffs for all adjusted losses within 30 days of receiving proof of loss and either an agreement between the parties, the entry of final judgment, or the filing of an appraisal award. *See* Policy at 63. The appraisal panel issued the original appraisal award on May 20, 2024, and the corrected award on June 3, 2024. On June 13, 2024, Travelers issued a check to Plaintiffs for the remaining amount owed to them. By paying Plaintiffs for all adjusted losses within 30 days of the filing of the appraisal award, Travelers paid the claim in accordance with the policy.

Plaintiffs do not dispute that Travelers paid the claim within 30 days of the filing of the appraisal award. Instead, they assert that Travelers breached the contract by unreasonably delaying the claim. Plaintiffs argue that "Wisconsin law recognizes that the failure to pay in accordance with the policy may include delay of payment." Dkt. No. 31 at 20. Despite the fact that Travelers paid in accordance with the policy, Plaintiffs claim that Travelers breached its duty of good faith by unreasonably delaying the initiation and conclusion of the claim investigation. *Id.* at 23. In

15

essence, Plaintiffs' claims for breach of contract and for bad faith are based on the same allegation: that Travelers unreasonably delayed the investigation and payment of their claim.

To be sure, there was a substantial delay from the time of the loss (May 27, 2022) to Plaintiffs' receipt of Travelers' final payment (June 14, 2024). But the undisputed evidence shows that the delay is not attributable to Travelers' unreasonable denial of coverage or its delay in investigating the loss. Indeed, Travelers acknowledged coverage under its policy and arranged for emergency measures to minimize damage and remediation work within five days of receiving notice. Plaintiffs did not present Travelers with a repair estimate until November 4, 2022, when they submitted the DeLeers estimate for over $95,000, substantially greater in scope and in cost from what it had previously estimated. Plaintiffs fault Travelers for its initial refusal to accept the itemization for the use of natural marble tile, but even after that issue was resolved on December 28, 2022, the party's estimates were still far apart. Plaintiffs insisted that the repair costs were the amount of DeLeers' bid, and by February 1, 2023, DeLeers' bid had increased from $95,374 to $98,803.

There is no rule that an insurer must accept the bid of its insured's preferred contractor as conclusive evidence of the cost of repair. Yet, when Travelers offered to hire a contractor to inspect Plaintiffs' property and prepare a competitive bid on February 14, 2023, Plaintiffs insisted that the contractor be a high-end custom home builder in Door County with the capacity to complete the project within three months of selection. Travelers arranged to have Portside Builder provide a quote, but Portside declined when Plaintiffs made clear that it would not get the job, regardless of the quote it provided. On February 17, 2023, Travelers hired Cyril Zacharias of MKA International, Inc., a construction consultant and engineering firm, to write an independent estimate. Based on his inspection, Zacharias submitted a preliminary bid with a replacement cost

16

that was $51,498 less than the amount DeLeers had bid. Travelers promptly revised its repair estimate to match Zacharias' bid and issued an additional loss payment to Plaintiffs. In the meantime, as Zacharias was trying to obtain additional information from DeLeers in an effort to reconcile the differences in bids, Plaintiffs filed this action in Door County Circuit Court.

It was at that point that Travelers invoked the appraisal process that the policy provided for resolving disputes over the amount of a loss. Because Plaintiffs apparently refused to cooperate in the process clearly set out in the policy, Travelers was forced to file a motion to stay the litigation and compel the required appraisal. Dkt. No. 18. When Plaintiffs failed to respond to Travelers' motion, the court granted the motion by order dated November 2, 2023, and directed Travelers to notify the court within ten days of completion of the appraisal process. Dkt. No. 20.

Hearing nothing from the parties, on March 22, 2024, the court ordered Plaintiffs to file a report with the court within ten days. Dkt. No. 21. On March 25, 2024, Plaintiffs advised the court that the parties had retained appraisers, the process was underway, and they were nearing completion. Dkt. No. 22. When no report was filed by October 2, 2024, the court directed the clerk to set the matter on its calendar for a status conference. Dkt. No. 23. The status conference was held on October 10, 2024, at which time the parties advised the court that although the appraisal process was complete, Plaintiffs had "an issue with it." Dkt. No. 24. The parties requested an opportunity to try to resolve the matter themselves and request referral to a U.S. Magistrate Judge for mediation, if necessary. The court agreed and set the matter for a further status conference on December 10, 2024. *Id.*

On December 10, 2024, the parties reported that Plaintiffs' counsel submitted an offer the previous day but Travelers' attorney had not had time to discuss it with his client. They requested a further status conference in two weeks. Dkt. No. 25. On January 3, 2025, Plaintiffs' counsel

17

advised the court that he wished to challenge the appraisal process. Travelers' counsel reported that his client had paid the appraisal award in full and anticipated filing a motion to dismiss within a month. Dkt. No. 26. After receiving an unopposed extension of time, Travelers filed the motion now before the court on February 10, 2025. Dkt. No. 30.

Given this history and having approved the appraisal process that resulted in an award of $60,482.92 ($71,424.48 less $10,941.56 for mitigation), which was more than $38,000 less than the amount demanded by Plaintiffs, no reasonable jury could find that Travelers unreasonably delayed or investigated Plaintiffs' claim. To the contrary, because the appraisal process resulted in an award substantially below the amount demanded by Plaintiffs, Travelers' refusal to pay the amount Plaintiffs demanded can only be considered reasonable. Absent evidence that would support a finding that Travelers' refusal to immediately pay Plaintiffs the full amount they demanded, Plaintiffs' claim for breach of contract, as well as their bad faith claim, fails as a matter of law. To hold otherwise would impose on insurance companies a duty to pay whatever amount the contractors of their insureds bid for the job or face judgments for that amount, along with punitive damages and their insured's attorneys' fees. If that were the rule, insurance could become unaffordable or at least much more expensive.

Plaintiffs cite *Danner v. Auto-Owners Insurance* as support for their argument that the evidence is sufficient to allow their bad faith claim to proceed. 2001 WI 90, 245 Wis. 2d 49, 629 N.W.2d 159. But *Danner* is clearly distinguishable on its facts from this case. *Danner* involved an insured's claim for underinsurance benefits against her own auto insurer. Underinsurance benefits are available under an insured's own policy when the liability coverage of the driver who causes an accident is insufficient to adequately compensate the insured for her own injuries. In *Danner*, the insured was injured when a third party traveling toward her made a sudden left turn

18

in front of her, leaving no time for her to stop or avoid the accident. *Id.* ¶ 9. The third-party driver had liability limits of only $25,000, but the insured had underinsurance limits under three separate policies issued by Auto-Owners Insurance that, when stacked, amounted to $300,000. Even though the third-party driver was clearly responsible for the accident and its insured's medical expenses grew to approximately $22,000, Auto-Owners took the position that its coverage was only $100,000 and offered its insured only $10,000. *Id.* ¶¶ 28–30. Even worse, it appears that Auto-Owners' attorney sought to convince the insurer for the third-party driver to settle its case with Auto-Owners' insured for less than its policy limits and even suggested that Auto-Owners offer "some money" to the insurer as an inducement so as to avoid triggering coverage under its own policy. *Id.* ¶ 25. Finally, when the underinsurance claim went to arbitration after the third-party insurer paid over its limits, the insured was awarded over $220,000, more than four times what Auto-Owners had offered before arbitration. *Id.* ¶¶ 32–36.

Based on this evidence, the Wisconsin Supreme Court declined in *Danner* to overturn the jury's finding that Auto-Owners had breached its duty of good faith in its handling of its insured's underinsurance claim. In this case, by contrast, the insureds were awarded substantially less than they demanded. As for the delay, either party was free to invoke the appraisal process at any time for a prompt and inexpensive resolution of the disagreement over the cost of repair. Plaintiffs chose instead to start a lawsuit which has now lasted almost two-and-a-half years with untold dollars expended in attorneys' fees.

In any event, because Travelers did not unreasonably delay its investigation and paid Plaintiffs' claim within 30 days of the filing of the appraisal award in accordance with the policy, it did not breach the insurance contract. Accordingly, Plaintiffs' breach of contract claim fails. And with the loss of their breach of contract claim, their bad faith claim also fails. *See Brethorst*,

19

334 Wis. 2d 23, ¶ 65. Travelers' motion for summary judgment on Plaintiffs' breach of contract and bad faith claims is therefore granted.

### 2. Interest under Wis. Stat. § 628.46

Plaintiffs also assert that they are entitled to statutory interest pursuant to Wis. Stat. § 628.46. In pertinent part, Wis. Stat. § 628.46(1) provides:

> Unless otherwise provided by law, an insurer shall promptly pay every insurance claim. A claim shall be overdue if not paid within 30 days after the insurer is furnished written notice of the fact of a covered loss and of the amount of the loss. If such written notice is not furnished to the insurer as to the entire claim, any partial amount supported by written notice is overdue if not paid within 30 days after such written notice is furnished to the insurer. Any part or all of the remainder of the claim that is subsequently supported by written notice is overdue if not paid within 30 days after written notice is furnished to the insurer. Any payment shall not be deemed overdue when the insurer has reasonable proof to establish that the insurer is not responsible for the payment, notwithstanding that written notice has been furnished to the insurer. . . . All overdue payments shall bear simple interest at the rate of 7.5 percent per year.

"The purpose of § 628.46 is to discourage insurance companies from creating unnecessary delays in paying claims and to compensate claimants for the value of the use of their money." *Dilger v. Metro. Prop. & Cas. Ins. Co.*, 2015 WI App 54, ¶ 11, 364 Wis. 2d 410, 868 N.W.2d 177 (citation omitted).

Travelers cites *Kontowicz v. American Standard Insurance Co. of Wisconsin* for the proposition that interest is owed under Wis. Stat. § 628.46 only when "the insured has provided both timely notice of a loss and sufficient information that a sum certain is owed." Dkt. No. 30 at 18. Travelers asserts that Plaintiffs are not entitled to statutory interest because Plaintiffs never provided proof that a sum certain was owed for their loss. The sum certain was not determined until the appraisal process was completed, and Travelers paid the balance due ten days later. Because full payment was made within thirty days of notice of the amount of the loss, Travelers argues that Plaintiffs' claim for interest under § 628.46 must be dismissed.

20

In *Kontowicz*, the Wisconsin Supreme Court adopted a three-part test for applying Wis. Stat. § 628.46 in cases involving a third-party claimant:

> We hold that Wis. Stat. § 628.46 does apply to third-party liability claims for personal injury. However, we limit our holding to only those situations in which three conditions to trigger interest are met. First, there can be no question of liability on the part of the insured. Second, the amount of damages must be in a sum certain amount. Third, the claimant must provide written notice of both liability and the sum certain amount owed. If the insurer has "reasonable proof" it is not responsible, the statute does not apply.

290 Wis. 2d 302, ¶ 48. Because Plaintiffs here are not third-party claimants, one could argue that the test set forth in *Kontowicz* does not apply here. The Wisconsin Court of Appeals has apparently suggested as much in *dicta*. *See Casper v. Am. Int'l S. Ins. Co.*, 2017 WI App 36, ¶ 26, 376 Wis. 2d 381, 897 N.W.2d 429.

But it is unclear how the same statutory language can have one meaning for one kind of case and another entirely different meaning when applied to another. Nor is it clear why interest is not allowed when the insurer has a reasonable belief that the claim is not covered but is allowed when the insurer has a reasonable belief that the amount of the loss is significantly less than the amount its insured is claiming. If the purpose of the statute is "to discourage insurance companies from creating unnecessary delays in paying claims and to compensate claimants for the value of the use of their money," *Dilger*, 364 Wis. 2d 410, ¶ 11, it makes little sense to apply it to cases in which the insurer lacks the information to pay the full amount of the claim through no fault of its own. Finally, where, as here, the claim is for replacement cost and the amount is determined through the policy's appraisal process, claimants are presumably compensated for the value of the use of their money through the process itself. This follows from the fact that the determination of replacement cost is made at the time of the appraisal, not the time of the loss, and thus any increase in the cost of labor or materials are already factored into the amount awarded.

21

For all of these reasons, the court concludes that Plaintiffs are not entitled to interest under Wis. Stat. § 628.46. Travelers issued its initial payment to Plaintiffs within 30 days after it received notice of loss. Travelers issued further payments within 30 days of receiving additional information of the loss. And Travelers issued its final payment within 30 days of the appraisal award determining the sum certain amount owed as determined under the terms of the policy. Plaintiffs' claim for interest is therefore dismissed.

## CONCLUSION

For these reasons, Travelers' motion for summary judgment and to confirm the appraisal award (Dkt. No. 30) is **GRANTED**. The Clerk is directed enter final judgment confirming the appraisal award and dismissing all claims by Plaintiffs against Travelers.

**SO ORDERED** at Green Bay, Wisconsin this 29th day of September, 2025.

William C. Griesbach
United States District Judge